No. 15-717C
(Judge Campbell-Smith)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CALLAN CAMPBELL, *et al.*, on behalf of themselves
and on behalf of a class of all others similarly situated,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR RECONSIDERATION

CHAD A. READLER
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

FRANKLIN E. WHITE, JR.
Assistant Director

JOHN J. TODOR
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tele: (202) 616-2382
Fax: (202) 514-8640

January 5, 2018                    Attorneys for Defendant

# <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

TABLE OF AUTHORITIES ............................................................................................ ii

ARGUMENT ........................................................................................................2

    I.      Standard Of Review ........................................................................................2

    II.     The Court Properly Ruled That Plaintiffs' Claims Were Untimely Filed .........3

             A.      Plaintiffs Fail To Show That The Alleged Government Action
                    Giving Rise To Their Takings Claims Accrued At The Date Of
                    The Closing Of The 363 Sale Rather Than The Entry Of The Sale
                    Order ................................................................................................3

             B.      Plaintiffs Fail To Demonstrate That Their Claims Accrued With
                    The "Effective Date" Of The Sale Order On July 9, 2009, Because
                    Plaintiffs Point To No Alleged Coercion By The Government On
                    That Date ...........................................................................................9

    III.    Plaintiffs Do Not Establish A Property Interest In Their Successor Liability
          Claims .......................................................................................................11

CONCLUSION ....................................................................................................14

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*A&D Auto Sales, Inc. v. United States,*
    748 F.3d 1142 (Fed. Cir. 2014)...................................................................... *passim*

*Acceptance Ins. Cos. v. United States,*
    583 F.3d 849 (Fed. Cir. 2009)............................................................................6, 7

*Alliance of Descendants of Texas Land Grants v. United States,*
    37 F.3d 1478 (Fed. Cir. 1994).................................................................................8

*Ammex, Inc. v. United States,*
    52 Fed. Cl. 555 (2002) .............................................................................................2

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).............................................................................................6, 9

*Branch. v. United States,*
    69 F.3d 1571 (Fed. Cir. 1995)............................................................................6, 7

*Cuban Truck & Equip Co. v. United States,*
    333 F.2d 873 (Ct. Cl. 1964) ...................................................................................6

*Fallini v. United States,*
    56 F.3d 1378 (Fed. Cir. 1995)............................................................................7, 8

*Foman v. Davis,*
    371 U.S. 178 (1962)..................................................................................................2

*Goodrich v. United States,*
    434 F.3d 1329 (Fed. Cir. 2006)...............................................................................8

*Kabua v. United States,*
    546 F.2d 381 (Ct. Cl. 1976) ....................................................................................7

*Northwest La. Game & Fish Preserve Comm'n v. United States,*
    446 F.3d 1285 (Fed. Cir. 2006)...............................................................................7

*Plaintiffs in Winstar-Related Cases v. United States,*
    37 Fed. Cl. 174 (1997) .............................................................................................9

*Principal Mutual Life Ins. Co. v. United States,*
    29 Fed. Cl. 157 (1993) .............................................................................................2

ii

*Sonoran Tech. and Prof. Serv., LLC v. United States,*
    133 Fed. Cl. 401 (2017) ........................................................................................2

*Turney v. United States,*
    126 Ct. Cl. 202 (1953) ........................................................................................8

*United States v. Dickinson*,
    331 U.S. 745 (1947) ...........................................................................................7

*Yuba Natural Resources, Inc. v. United States*,
    904 F.2d 1577 (Fed. Cir. 1990)...........................................................................2

## **FEDERAL STATUTES**

11 U.S.C. § 363..............................................................................................................1

28 U.S.C. § 2501.......................................................................................................2, 3

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| CALLAN CAMPBELL, *et al.*, ) | |
| on behalf of themselves and on behalf of ) | |
| a class of all others similarly situated, ) | No. 15-717C |
| ) | Judge Campbell-Smith |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| THE UNITED STATES, ) | |
| ) | |
| Defendant. ) | |

<u>**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR RECONSIDERATION**</u>

Pursuant to RCFC 59(f) and this Court's order of November 28, 2017, defendant, the United States, respectfully submits this response to plaintiffs' motion for reconsideration of the Court's opinion of October 30, 2017, motion to amend the judgment, and motion for leave to file a second amended complaint. *See* Pl. Mot. Recon., Nov. 27, 2017, ECF No. 35; Opinion, Oct. 30, 2017, ECF No. 33.

As explained in our previous briefing and in the Court's October 30, 2017 opinion, in 2009, following years of decline and in the wake of the financial crisis, General Motors Corporation ("GM") sought Government assistance and bankruptcy protection.  With bankruptcy court approval pursuant to section 363 of the United States Bankruptcy Code (11 U.S.C. § 363), and with Government financing, the bankrupt GM entity ("Old GM") sold substantially all of its assets, and transferred certain liabilities, to a new entity ("New GM") that was organized to acquire the assets of Old GM.  Plaintiffs – personal injury claimants with unsecured product liability claims against Old GM  – allege that, as a condition of the Government financing that allowed GM to stay viable through bankruptcy, the Government demanded that, in the section 363

sale, New GM would not assume successor liability for plaintiffs' personal injury claims against Old GM.

In its opinion of October 30, 2017, following full briefing on the motion to dismiss and supplemental briefing ordered by the Court, the Court ruled that plaintiffs' amended complaint should be dismissed for: (1) lack of subject matter jurisdiction because plaintiffs' claims were untimely filed under 28 U.S.C. § 2501; or, in the alternative, (2) failure to state a claim upon which relief may be granted. None of plaintiffs' arguments in their motion for reconsideration or the facts pled in plaintiffs' proposed second amended complaint alter the basis for the Court's conclusions in its October 30, 2017 opinion. Accordingly, the Court should deny plaintiffs' motion.

## ARGUMENT

### I.   Standard Of Review

The decision to grant a motion for reconsideration is at the sound discretion of the Court. *Yuba Natural Resources, Inc. v. United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990). The Court should grant reconsideration to correct a "manifest (*i.e.*, clearly apparent or obvious) error of law or a mistake of fact." *Ammex, Inc. v. United States*, 52 Fed. Cl. 555, 557 (2002). Nevertheless, a Court will not grant a motion for reconsideration if the movant "'merely reasserts . . . arguments previously made . . . all of which were carefully considered by the Court.'" *Id.* (quoting *Principal Mutual Life Ins. Co. v. United States*, 29 Fed. Cl. 157, 164 (1993)). The Court should deny leave to amend a complaint if there is evidence of delay, bad faith, repeated failure to correct a complaint's deficiencies, undue prejudice to the opposing party, or if the amendment would be futile. *See A&D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1158 (Fed. Cir. 2014) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Sonoran Tech. and Prof. Serv., LLC v. United States,* 133 Fed. Cl. 401, 403 (2017).

2

## II. **The Court Properly Ruled That Plaintiffs' Claims Were Untimely Filed**

The Court correctly ruled that plaintiffs' action was untimely filed because plaintiffs'

amended complaint does not support an assertion that any alleged coercion by the Government

occurred any later than July 5, 2009, the date of the sale order in the bankruptcy court.  *See*

Opinion, Oct. 30, 2017, at 2; Sale Order, ECF No. 4-1.  Because plaintiffs filed their complaint

on July 9, 2015, more than six years after this date, the Court dismissed plaintiffs' complaint

under RCFC 12(b)(1) because it was untimely under the Court's six-year statute of limitations

set forth in 28 U.S.C. § 2501.  Plaintiffs argue that the Court should reconsider this decision

based on additional facts they propose to file in a second amended complaint that allegedly

would establish that their claims accrued on July 10, 2009, the closing of the section 363 sale.  In

the alternative, plaintiffs argue that their claims accrued no earlier than July 9, 2009, the alleged

"effective date" of the sale order.  Neither of plaintiffs' arguments has merit, as the additional

allegations plaintiffs propose to include do not detract from the Court's conclusion that any

alleged coercion by the Government occurred, at latest, by entry of the sale order on July 5,

2009.  Accordingly, the Court should deny plaintiffs' motion for reconsideration.

### A. **Plaintiffs Fail To Show That The Alleged Government Action Giving Rise To Their Takings Claims Accrued At The Date Of The Closing Of The 363 Sale Rather Than The Entry Of The Sale Order**

Plaintiffs base their motion for reconsideration upon additional facts they propose to file

in a second amended complaint, which they claim supports a conclusion that plaintiffs' claims

did not accrue until the closing of the section 363 sale on July 10, 2009, rather than the entry of

the sale order on July 5, 2009.  *See* Pl. Mot. Recon. at 4-7.  Plaintiffs fail to justify the filing of a

second amended complaint because plaintiffs fail to show how these additional facts would alter

the Court's conclusion that plaintiffs' action was time-barred.

3

In deciding the Government's motion to dismiss, the Court concluded that "this is not a case in which the jurisdictional facts underlying the claims in a complaint have not been adequately explained.  Plaintiffs have filed two complaints and five briefs in this case setting forth every pertinent fact required for the court's jurisdictional analysis."  Opinion, Oct. 30, 2017, at 9.  The proposed facts set forth in plaintiffs' proposed second amended complaint do not detract from the facts already explored at length in the Court's October 30, 2017 opinion, including plaintiffs' first amended complaint, the bankruptcy court pleadings (including the sale order), and the bankruptcy court's opinion.  Thus, there is no basis for the Court to entertain plaintiffs' belated attempt to give a new interpretation to the same factual record.

Notwithstanding plaintiffs' renewed assertions in its second amended complaint that the alleged coercion did not occur until the closing of the bankruptcy sale on July 10, 2009, the Court, after considering the relevant evidence, concluded that the alleged coercion for General Motors to agree to the terms of the sale order occurred no later than July 5, 2009.  *See* Opinion, Oct. 30, 2017, at 12 ("All of the allegations in the complaint and plaintiffs' briefs are consistent. The government action alleged to have directly caused the taking is the coercion of third parties to include an extinguishment provision in the July 5, 2009 Sale Order.").

The Court's analysis, in turn, relied upon plaintiffs' amended complaint, plaintiffs' own characterization of their claims in numerous briefings, and the uncontested timeline of events from the bankruptcy court proceedings.  Plaintiffs point to no facts to contradict the Court's conclusion that, by July 5, 2009, the Government had already taken all actions relevant to GM's decision to accept Government assistance and the negotiation with the Government of the allegedly coercive terms of the 363 sale.  Nothing in plaintiffs' proposed second amended complaint detracts from the validity of the Court's conclusion that any allegedly coercive

4

Government act occurred, at latest, by July 5, 2009.  Therefore, the Court should deny plaintiffs'

request to file a second amended complaint because such an effort would be futile in the fact of a

renewed motion to dismiss.  *See A&D Auto Sales*, 748 F.3d at 1158.

Plaintiffs base their motion for reconsideration upon additional facts they propose to file

in a second amended complaint, which they claim provides additional facts to support a

conclusion that plaintiffs' claims did not accrue until the closing of the section 363 sale on July

10, 2009, rather than the entry of the sale order on July 5, 2009.  *See* Pl. Mot. Recon. at 4-7.  It

appears, however, that the proposed second amended complaint does not alter the sequence of

events that the Court had already considered in making its decision.  For example, plaintiffs

plead new facts concerning the Government's statements in litigation challenging the sale order,

but do not appear to plead facts that were not previously considered by the Court.  *Compare* Pl.

Mot. Recon., Exh. A, ¶¶ 147-56 (pleading facts concerning Government litigating challenges to

sale order between July 6, 2009, and July 10, 2009) *with* Opinion, Oct. 30, 2017, at 9 ("The court

observes that the validity of the Sale Order and the interpretation of its various provisions have

been vigorously and continuously litigated from July 6, 2009 onward.").[1]

In *A&D Auto Sales* – which involved the same GM bankruptcy as this case – the United

States Court of Appeals for the Federal Circuit granted the plaintiffs leave to amend their

---

[1] As the Court notes in its opinion, at oral argument, plaintiffs' counsel asserted that the Government "agrees" with plaintiffs' position regarding claim accrual.  *See* Opinion, Oct. 30, 2017, at 2 n.1.  To clarify, in our motion to dismiss, we argued that "plaintiffs are time-barred from any allegations with respect to GM's decision to file bankruptcy or accept the terms of the 363 sale."  Def. Mot. Dismiss, at 38, Oct. 8, 2015, ECF No. 8.  Due to plaintiffs' imprecision in defining the Government act that allegedly resulted in a taking, we did not move to dismiss the complaint on statute of limitations grounds.  However, because the Court has concluded that the "government action alleged to have directly caused the taking is the coercion of third parties to include an extinguishment provision in the July 5, 2009 Sale Order," *see* Opinion, Oct. 30, 2017, at 12, it would be consistent with our position to dismiss plaintiffs' complaint on statute of limitations grounds.

complaint to amend economic loss allegations that were insufficient.  *See A&D Auto Sales*, 748 F.3d at 1158.  That opportunity to amend, however, was to allow plaintiffs to make new economic loss allegations, rather than to change facts that the Court had already determined. Because the Court has ruled that the factual record concerning the sequence of events in the GM bankruptcy is "very well-developed," Opinion, Oct. 30, 2017, at 9, this a different situation than the permission to refile a new set of economic loss allegations in *A&D Auto Sales*.  The Federal Circuit further ruled in *A&D Auto Sales* that "[o]f course it would not be sufficient to include conclusory loss of value allegations."  *A&D Auto Sales*, 748 F.3d at 1158 (citing *Ashcroft v. Iqbal*, 556 U.S. at 662, 678 (2009)).  Here, plaintiffs' proposed facts amount to the same sort of conclusory allegations that the Federal Circuit warned would be insufficient in *A&D Auto Sales*. Therefore, plaintiffs provide no basis for the Court to reconsider its decision.

Alternately, plaintiffs argue that their claims did not accrue until the closing of the sale on July 10, 2009, because that was when the Government allegedly assumed "effective control" over plaintiffs' successor liability claims.  *Id.* at 5 (citing *Cuban Truck & Equip Co. v. United States*, 333 F.2d 873, 878 (Ct. Cl. 1964); *Branch v. United States*, 69 F.3d 1571, 1754-75 (Fed. Cir. 1995)).  Plaintiffs' argument fails to address the Court's analysis, which explicitly provided that the Government action that allegedly constituted a taking "is not necessarily the moment when the value of property is destroyed – the diminishment in value of the plaintiff's property may occur later, at another step in the sequence of events."  Opinion, Oct. 30, 2017, at 10 (citing *Branch*, 69 F.3d at 1575; *Acceptance Ins. Cos. v. United States*, 583 F.3d 849, 855-57 (Fed. Cir. 2009)).

Plaintiffs' attempt to distinguish this case from *Branch* and *Acceptance* fails.  In *Branch*, the Federal Circuit determined that the alleged Government act for takings purposes was not the

closing and seizure of the bank at issue, but rather the earlier assessment of the bank's assets. *See Branch*, 69 F.3d at 1575.  Similarly, in *Acceptance*, the Federal Circuit ruled that the Government action allegedly giving rise to a taking was the refusal to permit a sale of a portfolio of contracts, and not subsequent events that allegedly caused further economic harm to plaintiffs. *See Acceptance*, 583 F.3d at 855-57.  This does not equate to plaintiffs' argument that the claims in *Acceptance* accrued with the "tangible loss to the plaintiff," *see* Pl. Mot. Recon. at 7, as *Branch* and *Acceptance* establish that the Government action causing plaintiffs' claims to accrue may occur earlier than the eventual "tangible loss to the plaintiff."

Plaintiffs also cite to *Northwest Louisiana Game & Fish Preserve Commission v. United States*, 446 F.3d 1285 (Fed. Cir. 2006), for the proposition that their claims did not accrue until the closing date because it was only then that plaintiffs suffered damage.  *See* Pl. Mot. Recon. at 5; *Northwest La. Fish*, 446 F.3d at 1291 ("A possible future taking of property cannot give rise to a present action for damages").  That case, which involved the question of when a cause of action accrued for a gradual overgrowth of the plaintiffs' lands, applied the "stabilization" framework in flooding cases from *United States v. Dickinson*, 331 U.S. 745 (1947).  This "stabilization" framework is not applicable to this case, which involves a discrete event – the 363 sale – that allegedly resulted in the taking.  Indeed, the Federal Circuit ruled in *Fallini v. United States*, 56 F.3d 1378, 1381-82 (Fed. Cir. 1995), that "the Supreme Court [has] 'more or less limited [*Dickinson*] to the class of flooding cases to which it belonged, when the landowner must wait in asserting his claim, until he knows whether the subjection to flooding is so substantial and frequent as to constitute a taking.'"  *Id.* at 1381-82 (quoting *Kabua v. United States*, 546 F.2d 381, 384 (Ct. Cl. 1976)).

The Federal Circuit also ruled in *Goodrich v. United States*, 434 F.3d 1329 (Fed. Cir. 2006), that "the 'obligation to sue' arises once the 'permanent nature' of the government action is evident, regardless of whether damages are 'complete and fully calculable.'" *Id.* at 1336 (quoting *Fallini,* 56 F.3d at 1381-82). "A claimant under the Fifth Amendment must show that the United States, by some specific action, took a private property interest for a public use without just compensation. Therefore, a claim under the Fifth Amendment accrues when that taking action occurs." *Alliance of Descendants of Texas Land Grants v. United States*, 37 F.3d 1478, 1481 (Fed. Cir. 1994). Here, because the Court has ruled that the only alleged "taking action" was the alleged coercion to exclude successor liability claims from the 363 sale, the "permanent nature of the government action [was] evident" as of the entry of the sale order, and therefore plaintiffs' "obligation to sue" began with that date. *See Alliance of Descendants*, 37 F.3d at 1381; *Goodrich*, 434 F.3d at 1336.

Plaintiffs also rely upon *Turney v. United States*, 126 Ct. Cl. 202 (1953), for the proposition that a taking occurred only when the plaintiffs were forced by "irresistible pressure" from a prior Government placing of an embargo to turn property over to the Government. Pl. Mot. Recon. at 6 (quoting *Turney*, 126 Ct. Cl. at 214). The *Turney* court ruled that the taking occurred when the Army officially took possession of the property. *Turney*, 126 Ct. Cl. at 214. *Turney*, however, involved a question of the date of valuation for the property rather than a question of whether the statute of limitations had run. Furthermore, as a physical takings case, *Turney* involved physical possession as the test for whether a taking had occurred, as opposed to the regulatory taking alleged by plaintiffs here. Also, in *Turney*, the taking resulted from a later, separate contract between the plaintiffs and the Government that occurred after the "irresistible pressure" from the placing of the embargo, whereas here there was no contract between the

8

Government and plaintiffs.  Therefore, even applying the framework from *Turney* here, the entry of the sale order would be the applicable date for the date of the alleged taking.

Similarly, plaintiffs argue that the Government could have changed its mind between entry of the sale order on July 5, 2009, and the closing on July 10, 2009, or that the stay order could have been stayed pending appeal, and therefore plaintiffs had not "suffered damage" that caused their claims to accrue prior to that date.  Pl. Mot. Recon. at 5-7.  Plaintiffs fail to establish that the possibility of later reversal means that plaintiffs' claims did not accrue.  Plaintiffs' arguments are also speculative.  Plaintiffs point to no basis for alleged political pressures or other reasons for the Government to reverse its decision between the entry of the sale order and closing that did not exist prior to entry of the sale order, and the sale order was not stayed.  A speculative basis for relief does not survive a motion to dismiss.  *See, e.g.*, *Iqbal*, 556 U.S. at 680.  This Court has also rejected plaintiffs' arguments that a "hypothetical and speculative" possibility of a reversal of a decision by the Government postpones the date of accrual of a claim.  *See Plaintiffs in Winstar-Related Cases v. United States*, 37 Fed. Cl. 174, 186 (1997) ("The possibility of future exceptions does not negate the harm inherent in the Government's breach.  Contrary to plaintiffs' assertions, it was the possibility of the exceptions, not the harm inflicted by FIRREA, that was hypothetical and speculative.").  Thus, plaintiffs fail to provide a basis for reconsideration.

> **B.    Plaintiffs Fail To Demonstrate That Their Claims Accrued With The "Effective Date" Of The Sale Order On July 9, 2009, Because Plaintiffs Point To No Alleged Coercion By The Government On That Date**

Plaintiffs argue that the logic of the Court's opinion compels a finding that any alleged coercion occurred no earlier than July 9, 2009, the "effective date" of the sale order.  *See* Pl. Mot. Recon. at 7.  This argument fails because plaintiffs do not point to any different act of

9

alleged coercion by the Government that supposedly would have occurred only as of the effective date of the sale order, as opposed to prior to the entry of the sale order.  To the contrary, as the Court correctly held in its October 30, 2017 opinion, the last alleged Government action that allegedly constituted a taking occurred no later than the July 5, 2009 sale order opinion.  *See* Opinion, Oct. 30, 2017, at 3 ("As a point of logic, for the bankruptcy court to have complied with the government's demand as memorialized in the July 5, 2009 'Sale Order,' the demand must have been made prior to the issuance of that order, not afterward.  Thus, any government action constituting a 'demand' of the bankruptcy court could not have been presented after July 5, 2009, but, at the latest, must have been presented on or before July 5, 2009.").

Plaintiffs point to no reason why the logic of the Court's opinion compels a conclusion that any alleged coercion by the Government would not have occurred until the effective date of the sale order, when the Court held that the alleged coercion that allegedly extinguished plaintiffs' successor liability claims against New GM occurred, at latest, with the bankruptcy court's decision to accept the terms of the sale order.  *See* Opinion, Oct. 30, 2017, at 10 ("In the court's view, the government action that directly caused that extinguishment occurred no later than July 5, 2009. . . . That particular action was the coercion of Old GM and the bankruptcy court into including the extinguishment of plaintiffs' successor liability claims against New GM in the bankruptcy court's July 5, 2009 Sale Order.").  The Court also ruled that no alleged Government action after the entry of the sale order constituted a taking.  *See* Opinion, Oct. 30, 2017, at 12 ("However, any government action taken from July 6 to July 10, 2009 is not the government action that directly caused the taking alleged in this case.")  Nothing in plaintiffs' argument concerning when the sale order took effect has any bearing upon when the Government

allegedly coerced Old GM and the bankruptcy court into accepting its terms.  Accordingly, plaintiffs' argument fails.

## III.   <u>Plaintiffs Do Not Establish A Property Interest In Their Successor Liability Claims</u>

Plaintiffs argue that the Court should reconsider its decision to dismiss under RCFC 12(b)(6), for failure to demonstrate that plaintiffs possessed a property interest for purposes of the Takings Clause, due to additional "jurisdictional facts" plaintiffs plead in their proposed second amended complaint.  *See* Pl. Mot. Recon. at 9-12.  As discussed above, plaintiffs' arguments concerning property interest are only relevant if the Court were to reconsider its RCFC 12(b)(1) decision regarding the statute of limitations issue.  Even if the Court were to consider plaintiffs' property interest arguments, however, plaintiffs have failed to provide a basis for the Court to reconsider its decision.  Plaintiffs' proposed "jurisdictional facts" simply restate, in conclusory fashion, their position that the Government did not have discretion in whether to provide rescue financing to GM during the financial crisis.  The Court has already considered these arguments and rejected them.  Therefore, plaintiffs fail to provide a basis for the Court to reconsider its decision.

In response to the Court's pointing out that, as briefing continued, "plaintiffs' description of their property interest became more convoluted," Opinion, Oct. 30, 2017, at 15, plaintiffs argue that, "Plaintiffs' essential view, as expressed in its last brief, was that a 'cause of action' can be a cognizable property interest under the Takings Clause when it protects their right to compensation for bodily injuries caused by defective cars manufactured by Old GM."  Pl. Mot. Recon. at 9.  As the Court held in its opinion, however, this is not the claimed property right underlying plaintiffs' claims, which the Court instead determined to be plaintiffs' claimed "rights to bring successor liability claims against New GM."  *See* Opinion, Oct. 30, 2017, at 16 ("Here,

11

the extinguished 'rights to bring successor liability claims against New GM,' Am. Compl. ¶ 9, ECF No. 4, are analogous, in many respects, to the terminated franchise agreements in *A & D Auto*, and this is the particular property interest underlying plaintiffs' takings claims.").

As the Court pointed out, plaintiffs' rights to bring successor liability claims against New GM, "are entirely contingent upon two discretionary acts of the federal government:  (1) a government financial intervention so that a New GM could be created; and, (2) a government intervention so that Old GM could file for bankruptcy requesting a 363 sale."  Opinion, Oct. 30, 2017, at 17.  "Until these two discretionary acts occurred, the property interest asserted by plaintiffs in their complaint did not exist, because there was no New GM to sue."  *Id.* Accordingly, plaintiffs' attempted redefinition of their property right as their cause of action against Old GM fails.

The Court correctly concluded that these "rights to bring successor liability claims against New GM" were too contingent in nature to be a cognizable property interest under the Takings Clause due to:  (1) "federal bankruptcy law, particularly the powers accorded the bankruptcy court by section 363"; and (2) "the federal government's discretionary right to condition its investment in New GM on the extinguishment of plaintiffs' successor liability claims against New GM."  *See* Opinion, Oct. 30, 2017, at 21.  Nothing in plaintiffs' motion or their proposed second amended complaint provides a factual basis to reconsider the Court's conclusion that plaintiffs lack a cognizable property interest for purposes of the Takings Clause.

Plaintiffs argue that their successor liability claims are not more contingent than the dealership agreements in *A&D Auto Sales* because the "right to reject executory contracts under Bankruptcy Code section 365 is as much a fundamental principle of bankruptcy law" as the section 363 provision that permitted the sale "free and clear" of plaintiffs' personal injury claims.

*See* Pl. Mot. Recon. at 10.  This argument fails because plaintiffs' successor liability claims are more contingent than the franchise agreements in *A&D Auto Sales* because of the nature of the underlying property right (personal injury claims vs. contracts) rather than the nature of the bankruptcy code provision that was used to exclude them (section 363 vs. section 365).  *See* Opinion, Oct. 30, 2017, at 17.  Thus, plaintiffs' argument that their underlying property interest is equivalent to the property interest in *A&D Auto Sales* fails.

Similarly, plaintiffs argue that their purported property interest "comports" with *A&D Auto Sales* because the finding of a property interest in *A&D Auto Sales* was "based not on the bankruptcy court's approval of such actions, but on the Government's having required dealer terminations as a condition of its financial assistance to Old GM."  Pl. Mot. Recon. at 11. Plaintiffs' argument amounts to repeating their arguments that the Government did not possess discretion as to whether to provide GM with rescue financing, but the Court has already considered and rejected these arguments.  Nothing in plaintiffs' proposed second amended complaint points to new evidence in support of their conclusion that the Government lacked discretion in whether to provide rescue financing to GM; instead, they simply repeat their positions that the Government had no choice but to exercise its discretion to do so.  Accordingly, plaintiffs fail to provide any factual basis for the Court to reconsider its decision.

Nothing in plaintiffs' proposed second amended complaint points to new evidence in support of their conclusion that the Government lacked discretion in whether to provide rescue financing to GM; instead, they simply repeat their positions that the Government had no choice but to exercise its discretion to do so.  *See, e.g.*, Pl. Mot. Recon., Exh. A, ¶¶ 10-14 (making conclusory statement that Government financing of GM bankruptcy "was not a discretionary act" but not providing facts to contradict Court's conclusion).  Absent such facts, plaintiffs fail to

13

provide any basis for the Court to reconsider its decision, and filing of a second amended complaint would be futile because it would not survive a motion to dismiss due to the lack of a cognizable property interest for purposes of the Takings Clause.

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court deny plaintiffs' motion for reconsideration, deny plaintiffs' motion to amend the Court's judgment, and deny plaintiffs' motion for leave to file a second amended complaint.

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director


/s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director


/s/ John J. Todor
JOHN J. TODOR
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tele: (202) 616-2382
Fax: (202) 514-8640

January 5, 2018                                  Attorneys for Defendant